CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

DEC 2 1 2017

LODGED_____REC'D_____
PAID_____DOCKETED_____



# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF OREGON

TRISH M. BROWN
CHIEF JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1592

STEPHEN A. RAHER
LAW CLERK

SUZANNE M. MARX
JUDICIAL ASSISTANT

December 21, 2017

Alexzander C.J. Adams
14705 SW Millikan Way
Beaverton, OR 97006

Keith D. Karnes
1860 Hawthorne Ave. NE
Salem, OR 97301

Paul Garrick
Office of the Standing Chapter 13 Trustee
400 E. Second Ave., Suite 200
Eugene, OR 97440

**VIA CM/ECF ONLY**

Re:   *In re Thomas Carter Vincent*, Case No. 17-62027-tmb13
      Chapter 13 Plan Confirmation

Dear Counsel:

This matter came before the court on the proposed chapter 13 plan filed by Debtor on June 29, 2017 (the "Plan," ECF No. 2). Trustee Naliko Markel and creditor Paula Dixon both objected to confirmation of the Plan. The court held an evidentiary hearing on November 21, 2017, at which Debtor was represented by Alexzander Adams, the Trustee was represented by Paul Garrick, and Ms. Dixon was represented by Keith Karnes.

## I.    Trustee's Objections

At the November 21 hearing, the Trustee reported that his objections were largely resolved, but he urged the court to confirm the Plan only if it is a non-modifiable 100% plan. Because of the doubts regarding the value of Debtor's assets (discussed below), I agree with the Trustee's position. A required plan amendment is discussed at the end of this ruling, along with two other preconditions for confirmation.

## II.   Ms. Dixon's Objections

At the outset, there is one issue I must address: Ms. Dixon, through counsel, has made numerous allegations of dishonest behavior by Debtor that are of doubtful relevance and are not supported

by evidence. Rather than recount every such unfounded allegation, I will confine this ruling to the matters that were actually litigated at the November 21 hearing.

Ms. Dixon alleges that Debtor has failed to disclose assets during the bankruptcy process. Ms. Dixon's pretrial memorandum includes a litany of allegedly concealed assets, but the actual evidence at the November 21 hearing was narrower. Many of the assets listed in Ms. Dixon's memorandum either have been disclosed by the Debtor through amended filings or were not mentioned at the hearing. Indeed, the evidence at the hearing overwhelmingly focused on one material asset: Debtor's coin collection.

Debtor's original schedule A/B listed a "[s]mall coin collection" valued at $5,000. ECF No. 1, Schedule A/B, line 8. The evidence shows that this disclosure is clearly inaccurate. Debtor admitted to omitting a substantial number of coins, and has subsequently amended his schedule A/B twice to list additional coins valued at $23,187.40 as of the petition date.[1] ECF No. 43. Debtor testified that he originally omitted two of his three coin collections because he was "very nervous" and thought it was "a known factor" because the coins had been disclosed during his divorce proceeding. This is not a satisfactory answer. Bankruptcy depends on honest voluntary disclosure, and Debtor's original schedules fall far short of the level of candor expected of debtors. Nonetheless, after the omissions were challenged at his § 341(a) meeting of creditors, Debtor amended his schedules and provided detailed descriptions of his coin collections, along with a description of how he calculated values.

Ms. Dixon has produced evidence that Debtor concealed certain coins during the divorce proceeding. What Debtor did in prior litigation in a different court is not relevant for purposes of plan confirmation. Ms. Dixon also contends that the coin collections were worth somewhere in excess of $50,000 on the petition date, but this allegation fails for lack of evidence. Quite simply, Ms. Dixon produced no competent evidence of value. Ms. Dixon's Trial Exhibit 7 is an appraisal report of the former couples' personal property, which includes the coin collections.

---

[1] The figure of $23,187.40 reflects the gross values listed on Debtor's second amended schedule A/B. The net value of the three collections is listed as $17,854.30. The difference reflects Debtor's estimated costs of sale, specifically fees imposed by ebay.com and Paypal. I decline to deduct the purported costs of sale for two reasons. First, Debtor provided no evidence suggesting that sales on ebay.com are the most efficient way to liquidate a coin collection. Second, the instructions for schedule A/B instruct Debtors to list the "current value" of assets, which is defined as "the *price* that could be realized from a cash sale or liquidation." Instructions: Bankruptcy Forms for Individuals (rev. Dec. 2017), at 14 and 42 (emphasis added). Although costs of sale are appropriately taken into account for some purposes (such as the best interests of creditors test contained in 11 U.S.C. § 1325(a)(4)), such costs do not seem relevant for purposes of a debtor's schedules. The instructions' reference to "price" instead of "proceeds" indicates to me that the values on schedule A/B should not deduct costs of sale.

This exhibit was not admitted into evidence, nor could it have been, because it is hearsay.[2] Moreover, even if it were to be admitted, it would be of limited practical use to the court. The appraisal does not include particularized descriptions (or even quantities) of the coins being appraised, nor does it contain even a rudimentary explanation of the appraisal methodology. Finally, the appraisal was conducted in April 2017, several months before the petition date, and thus is not particularly reliable in determining the nature and value of Debtor's assets on the relevant measuring date, i.e., June 29, 2017.[3]

There is one relevant omission that Ms. Dixon did succeed in proving. Ms. Dixon provided credible evidence that Debtor has sold a few coins in the twelve months preceding the petition date. Debtor argues that these sales were not required to be disclosed on his statement of financial affairs line 18 (in the case of prepetition sales) and did not require court approval (in the case of postpetition sales), because he sells coins as a regular business activity. In that case, however, Debtor's schedule I and statement of financial affairs line 4 are both inaccurate, because they do not report any income from selling coins. To remedy this omission, I will require updated filings from the Debtor, as detailed in the following section.

In conclusion, I find that the Debtor has been careless in his disclosures to this court, but that he has cured any fatal defects by amending his filings. Ms. Dixon has alleged improper valuation of Debtor's coin collection, but has not supported this allegation with evidence. Moreover, even if Ms. Dixon's valuation allegations were correct, it would have little practical impact on creditors so long as the Plan provides for non-modifiable 100% dividend to creditors.

### III. Requirements for Confirmation

For the reasons discussed above, I conclude that the Debtor may confirm the Plan, but he must take the following three steps before I will enter a confirmation order.

---

[2] Ms. Dixon argued that the appraisal should be admitted because it was jointly paid for by both Debtor and herself as part of their divorce proceedings. This argument misconstrues the relevant legal standard. Just because Debtor paid for part of the appraisal does not mean that the written report is admissible as a statement of a party opponent. The report would be admissible against Debtor if he had taken some affirmative act to adopt its contents. *Transbay Auto Serv. v. Chevron USA*, 807 F.3d 1113, 1118-1119 (9th Cir. 2015). But the evidence showed the opposite: from the moment the report was finished, Debtor has vigorously disputed its accuracy.

[3] One could argue that the coins in Debtor's possession on the petition date should be the same as his collection as of June 29, less any sold coins reported on line 18 of Debtor's Statement of Financial Affairs. Debtor admits to selling coins during this period, but does not list any sales on line 18, because that question only addresses transfers outside the ordinary course of business. Debtor states that he regularly sells coins as a way of supplementing his income, and therefore he need not report such sales on line 18. This creates another problem for Debtor, since he did not disclose a coin-selling business—this matter is discussed in the following paragraph.

First, as discussed above, Debtor has not reported his income from selling coins. Before submitting an order confirming his Plan, Debtor must file an amended schedule I, amended statement of financial affairs, Local Bankruptcy Form D-2 ("Financial Review of Debtor's Non-Farming/Non-Fishing Business"), and Official Form 106Dec ("Declaration About an Individual Debtor's Schedules"), all of which must accurately disclose Debtor's income from coin sales.

Second, Debtor must add a new paragraph 11 to the Plan (which can be done via the order confirming plan), stating as follows:

> In exchange for confirming this plan over the objections of the Trustee and creditor Paula Dixon, the debtor agrees that the provision of 2(f)(2), "100%," is non- modifiable.

Finally, because of the uncertainty surrounding Debtor's current income derived from coin sales, I will require enhanced safeguards to ensure that Debtor accurately reports his income and pays taxes on it. Accordingly, Debtor must add a new paragraph 12 to the Plan, stating as follows:

> During the life of the plan, the debtor shall timely file all required tax returns or valid extension and provide to the Trustee, not later than May 15th of each year, copies along with proof of payment. Should the debtor fail to provide said proof to the Trustee, the Trustee may file a Motion to Dismiss pursuant to §1307(c), which will be duly considered by the Court after notice and a hearing.

Debtor's counsel should upload all required documents no later than 21 days from the date of this letter.

Very truly yours,

Trish M. Brown